"The bill of complaint is by Frieda Neuman, who, on April 5th, 1933, was appointed substituted administratrix of the goods and chattels, rights and credits of Rebecca Muehlfelder, deceased, late of the city of Newark, and who died October 5th, 1932.
"The decedent was the owner of jewelry, most of which was set in diamonds, and valued at from $5,000 to $6,000. The defendants, Hilda Fantl, Ruth Zucker and Leah Jennis, nieces of the decedent, now possess these jewels, claiming to be the owners thereof by virtue of a gift alleged to have been made in July, 1932. At that time the proof shows that the decedent was suffering from a severe illness, which the complainant *Page 352 
alleges affected her mental capacity to such an extent that she lacked complete control thereof; that because of her condition and the relationship between decedent and the defendants, the latter were able to, and did exercise undue influence in order to obtain the jewelry. Briefly, it is the contention of complainant, firstly, that no actual gift of the jewelry was made by the decedent, and secondly, if a gift of the jewelry was made to the defendants, such gift is ineffective because (a) it was improvidently made; (b) the requisites of a binding gift are not present; and (c) such gift was induced by the exercise of undue influence.
"The bill prays discovery, and that any gift alleged to have been made may be adjudged and decreed to be null and void.
"The illness of the deceased was described by Doctor Bush, attending physician, as arteriosclerosis. On June 25th, 1932, Mrs. Muehlfelder suffered a stroke, causing multiple hemorrhages of the brain. Although the disease was described as progressive, she enjoyed lucid moments when she recognized persons. In September her condition became worse, and death ensued in the following month.
"Miss Tappen, nurse in attendance, testified that the defendant nieces called very often during her illness, and frequently the patient was very much upset after such visits, and upon inquiry she elicited the fact that her upset condition was due to the fact that Mrs. Fantl requested the jewelry in order to take care of it during her aunt's illness. This witness says she heard Mrs. Fantl say `Aunt Becky, don't keep it here. It is dangerous. We will return it to you when you are better.' In July, 1932, she saw the defendants at the house of deceased, and Mrs. Fantl at that time had the jewelry in her hand and was heard to say, `I will return it when you are better.' This was two or three days before she heard Mrs. Fantl say that she wished to take the jewelry for safe keeping.
"Theresa Smegal, a maid in the home for several years, testified that on the day the jewelry was taken in July, 1932, she overheard Mrs. Fantl say to her aunt that she thought it would be best to put the jewelry in a vault and that she (Mrs. Fantl) thought it unsafe in the home with the help around. *Page 353 
That Mrs. Muehlfelder called the witness and requested her to get the key for a drawer in which the jewelry was kept; that the witness responded and then opened the drawer, took out the jewelry and handed it to Mrs. Muehlfelder, who in turn gave it to Mrs. Fantl. The witness says that from what she overheard of the conversation between Mrs. Muehlfelder and Mrs. Fantl, the jewelry was to be put in the vault for safe keeping during Mrs. Muehlfelder's illness. On the same day in July, Cecil Cox, the colored chauffeur in the employ of decedent, took the three nieces to a bank in Maplewood and saw the jewelry case in Mrs. Fantl's hand, and the three defendants went into the bank in Maplewood.
"On behalf of the defendants, the only witness who testified as to the circumstances of the alleged gift of the jewelry was Mrs. Fantl. She says that on the afternoon of July 6th, 1932, her two sisters and she were at the home of their aunt, and that when they were ready to go home her aunt motioned to her to wait; that her sisters went out and that she waited and asked her aunt what she wanted; that she was told by her aunt to open a certain drawer in the bureau but found that she could not do so, and was then directed by her aunt to call the maid; that when the maid entered her aunt said, `Do you remember the particular bag that I put my jewelry in? * * * Well, give it to Mrs. Fantl.' The jewelry, the defendant says, was in a brown leather bag and her aunt took out of the bag what she wanted and put what `she wanted to give me in this piece of chiffon and put it back into her leather bag,' and said, `now, I want you to come back tomorrow, bring that back again, that bag. * * * That is for you and the girls, except the bracelet, that is for Fanny. * * * Come back tomorrow with the leather bag because I want to see you again.' The next day the defendant says she returned alone and was told to go to the drawer and get a key and go to the third floor to a trunk and find a string of coral and a coral pin. That she did as directed and that her aunt then put some semi-precious jewelry into the pocketbook which she had returned and said `that this jewelry was for us, too.'
"The defendant denied that Cecil Cox, the chauffeur, drove her and her sisters to the bank in Maplewood in July, 1932. *Page 354 
The witness said that it was in January, 1929, when Cecil Cox drove her to the Maplewood bank at which time her aunt was also ill and was about to undergo an operation, `and before she was ready to go to the hospital she gave me all her jewelry, $200 in cash and her husband's platinum watch, in the presence of her husband, and told me to put it in my vault and then, if she didn't come through, it was ours, that — she meant my sisters and myself and my own and she told Cecil to take me home. Well, I didn't want to keep the things home and decided to take them right to the vault * * *.' She says she had the jewelry on that occasion for about six months and then gave it back.
"In July, 1932, Mrs. Fantl says that she and her two sisters went to the bank in Maplewood with the jewelry and that, although two of the defendants had private safe deposit boxes in that bank, they procured a new safe deposit box in the name of all three and divided the jewelry and marked it and placed it in the box.
"I am unable to reconcile the story told by Mrs. Fantl with the common impulses of our nature. This defendant says that she, Mrs. Zucker and Mrs. Jennis, on the day the gift was made, were all present in Mrs. Muehlfelder's bedroom. If the deceased intended to make the gift of the jewelry to all three why did she motion Mrs. Fantl to remain, and after the other two defendants left the room make the gift as described by her. The gift is alleged to have been made while Mrs. Zucker and Mrs. Jennis were downstairs, and when Mrs. Fantl joined them she says she related what had happened. The gift was valuable indeed, and yet, it appears that Mrs. Zucker and Mrs. Jennis did not immediately return to the bedroom and thank their aunt then or at other time. Neither did any of the defendants thereafter wear any of the jewelry. The reason given for this strange conduct is that they were told by the decedent not to wear it for fear that her husband (who died some months after his wife) would cause trouble. In other respects which I will not here set forth, the defendant's story is highly improbable to say the least. *Page 355 
"The testimony offered by the defendants, Mrs. Fantl, with respect to conversations with deceased and the circumstances under which the alleged gift of the jewelry was made was objected to on the hearing on the ground that it violated section 4, P.L.1900 p. 363, and the amendment thereof, P.L. 1931 ch. 163. The objection was overruled and the testimony allowed in view of chapter 189, P.L. 1931, which provides:
"`In all civil actions founded upon any allegation of fraud, breach of trust, willful default, or undue influence, the defendant may be sworn and examined as a witness on his own behalf, notwithstanding the opposite party may sue by a guardian or in a representative capacity.'
"The ruling was so made since the bill of complaint is in the alternative (a) to compel restoration of the jewelry by the defendants; (b) to set aside the gift thereof if made as improvident or the result of fraud or undue influence.
"The credible evidence, however, leads me to the conclusion that there was no gift of the jewelry by the decedent to the defendants, and that the same was entrusted to Mrs. Fantl for safe keeping in July, 1932, during the illness of her aunt, just as it was entrusted to her during the period of her illness in January, 1929.
"The answer of the defendants set forth that the complainant has an adequate remedy at law and reserved therein the right to move to dismiss the bill of complainant on the ground that the same does not disclose an equitable cause of action. At the conclusion of the hearing a motion to dismiss was made and denied.
"The bill of complaint was retained and sustained upon the theory that it is a bill in the alternative, to compel restoration of property by the defendants as agents or fiduciaries (if there was no completed gift); or to set aside the gift (if made) as improvident or the resuult of fraud or undue influence. McConnell, Executor, v. Stryker, 104 N.J. Eq. 610.
"The decree will be that the defendants, Hilda Fantl, Ruth Zucker and Leah Jennis, return to the complainant the diamond bracelet, diamond wrist watch, two diamond rings, *Page 356 
sautoir, string of pearls with diamond clasp, two diamond brooches and the semi-precious jewelry, all of which was produced on the trial and marked in evidence, and described as the jewelry delivered by the deceased to the defendant Hilda Fantl."
The decree appealed from will be affirmed, for the reasons expressed in the opinion of Vice-Chancellor Stein in the court of chancery.
For affirmance — THE CHIEF-JUSTICE, BODINE, HEHER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 8.
For reversal — LLOYD, DONGES, PERSKIE, JJ. 3.